01

02

03

04

05                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
06                              AT SEATTLE

07  EVA MIKEL,                          )    CASE NO. C05-1059-TSZ
                                        )
08          Plaintiff,                  )
                                        )
09          v.                          )    REPORT AND RECOMMENDATION
                                        )    RE: SOCIAL SECURITY
10  JO ANNE B. BARNHART, Commissioner   )    DISABILITY APPEAL
    of Social Security,                 )
11                                      )
            Defendant.                  )
12  _____ )

13          Plaintiff Eva Mikel proceeds through counsel in her appeal of a final decision of the

14  Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied

15  plaintiff's application for Supplemental Security Income (SSI) and Disability Insurance (DI)

16  benefits after a hearing before an Administrative Law Judge (ALJ).  Having considered the ALJ's

17  decision, the administrative record (AR), and all memoranda of record, it is recommended that this

18  matter be REMANDED for further administrative proceedings.

19                      **FACTS AND PROCEDURAL HISTORY**

20          Plaintiff was born on XXXX, 1943.[1]  She completed high school and attended college for

21  _____

22          [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
    General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01   three years.  Plaintiff performed as a singer/actress in her early adult years, and thereafter worked

02   as a chemical dependency counselor and case manager.

03        Plaintiff applied for SSI and DI in June 2002, alleging disability since September 15, 2001

04   due to depression.  Her application was denied initially and on reconsideration, and she timely

05   requested a hearing.

06        ALJ Cheri Filion held a hearing on September 8, 2004, taking testimony from plaintiff and

07   her friend Darlene Robinette.  (AR 354-395.)  On November 20, 2004, the ALJ issued a decision

08   finding plaintiff not disabled.  (AR 18-27.)

09        Plaintiff appealed the ALJ's decision.  On April 29, 2005, the Appeals Council denied

10   plaintiff's request for review.  (AR 6-10.)  The Appeals Council stated that a February 25, 2005

11   medical report from Frank J. Hammer, Ph.D., was "about a later time" and, therefore, did not

12   affect the ALJ's decision as to whether plaintiff was disabled beginning on or before November

13   20, 2004.  (AR 7.)  Plaintiff appealed this final decision of the Commissioner to this Court.

14                                    **JURISDICTION**

15        The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

16                                    **DISCUSSION**

17        The Commissioner follows a five-step sequential evaluation process for determining

18   whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

19   be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

20   engaged in substantial gainful activity since her alleged onset date.  At step two, it must be

21

22   official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01 | determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's major

02 | depressive disorder, posttraumatic stress disorder, and bulimia severe. Step three asks whether

03 | a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's

04 | impairments did not meet or equal the criteria for any listed impairments. If a claimant's

05 | impairments do not meet or equal a listing, the Commissioner must assess residual functional

06 | capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to

07 | perform past relevant work. The ALJ found plaintiff able to perform simple, repetitive tasks and

08 | unable to perform her past relevant work. If a claimant demonstrates an inability to perform past

09 | relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant

10 | retains the capacity to make an adjustment to work that exists in significant levels in the national

11 | economy. Applying the Medical-Vocational Guidelines, the ALJ found plaintiff not disabled and

12 | concluded there were a significant number of jobs in the national economy she could perform.

13 |      This Court's review of the ALJ's decision is limited to whether the decision is in

14 | accordance with the law and the findings supported by substantial evidence in the record as a

15 | whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more

16 | than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

17 | mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

18 | (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's

19 | decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

20 | 2002).

21 |      Plaintiff argues the ALJ failed to properly evaluate two reports from examining

22 | psychologist Dr. Kevin Morris or to account for the totality of the opinions of non-examining

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01   state-agency physicians Drs. Harold Johnston and Charles Regets.  Plaintiff further argues that the

02   ALJ should have obtained the testimony of a vocational expert at step five and that Dr. Hammer's

03   February 2005 report justifies a remand for further administrative proceedings under "sentence-

04   four" of 42 U.S.C. § 405(g).  The Commissioner argues that the ALJ's decision is supported by

05   substantial evidence and should be affirmed.   For the reasons described below, the undersigned

06   concludes that this matter should be remanded for further administrative proceedings.

07   <u>Physicians' Opinions</u>

08       In general, more weight should be given to the opinion of a treating physician than to a

09   non-treating physician, and more weight to the opinion of an examining physician than to a non-

10   examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted

11   by another physician, a treating or examining physician's opinion may be rejected only for "'clear

12   and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

13   Where contradicted, a treating or examining physician's opinion may not be rejected without

14   "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

15   *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  Where the opinion

16   of the treating physician is contradicted, and the non-treating physician's opinion is based on

17   independent clinical findings that differ from those of the treating physician, the opinion of the

18   non-treating physician may itself constitute substantial evidence. *See Andrews v. Shalala*, 53 F.3d

19   1035, 1041 (9th Cir. 1995).  It is the sole province of the ALJ to resolve this conflict. *Id.*

20   1.   <u>Dr. Morris</u>:

21       Plaintiff asserts that the ALJ failed to evaluate two reports from examining physician Dr.

22   Morris in which she was deemed markedly and moderately limited in a number of respects. (*See*

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01  AR 20, 117-20, and 129-32.)  She adds that, contrary to the ALJ's assertion that no one opined

02  that she is incapable of work (*see* AR 24), Dr. Morris's findings are tantamount to an opinion of

03  disability.  *See generally* Social Security Ruling (SSR) 85-15 ("A substantial loss of ability" to

04  perform "basic work-related activities would severely limit the potential occupational base[,]" and

05  "justify a finding of disability[.]") and Soc. Sec. Admin., Program Operations Manual Sys.

06  (POMS) DI 25020.010 (same).  Plaintiff argues that the ALJ's errors with respect to Dr. Morris

07  require remand for further consideration of his opinions.

08      The Commissioner avers that the ALJ properly did not give Dr. Morris's findings great

09  weight for several reasons, arguing as follows:

> The record clearly shows that after Plaintiff was on regular medication and treatment,
> her condition improved over time to the point where she was looking at furthering her
> education, was looking for work, and her medical providers noted that she was
> "highly functioning[.]"  Further, Plaintiff indicated that she felt medication was
> working and did not feel the need to attend frequent counseling[.]  In addition, Dr.
> Morris opined that Plaintiff's limitations would last at a maximum of six months, not
> twelve months, as required by the Social Security statutes.    See 42 U.S.C. §§
> 423(d)(1)(A), 1382c(a)(3)(A).  Indeed, the record reflects that in six months time,
> Plaintiff was doing better.

15  (Dkt. 16 at 7) (internal citations to record omitted).  The Commissioner also, noting Dr. Morris's

16  notation that plaintiff was not taking prescribed psychotropic medication based on a claimed lack

17  of funds, cites 20 C.F.R. §§ 404.1530, 416.930 for the proposition that, in order to be eligible for

18  benefits, plaintiff must follow treatment prescribed by her doctors that could have restored her

19  ability to work.  The Commissioner submits that the ALJ appropriately summarized and

20  interpreted conflicting evidence in detail, and that the Court may draw "specific and legitimate

21  inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 751, 755 ("The ALJ can meet th[]e

22  burden [of setting forth specific, legitimate reasons based on substantial evidence] by setting out

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01    a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

02    interpretation thereof, and making findings."; the ALJ need not "recite the magic words, 'I reject

03    [a physician's] opinion . . . because . . .'" and the court may properly draw inferences from the

04    ALJ' s opinion).

05          Plaintiff replies that the Commissioner inappropriately relies on post hoc rationalizations,

06    rather than the ALJ's decision itself.  She further argues that, even if the ALJ had relied on the

07    reasons proffered by the Commissioner, substantial evidence would not support that rationale.

08    First, she rejects the argument as to the duration of her condition as assessed by Dr. Morris, noting

09    that his second six-month projection trumps the obviously optimistic first six-month projection

10    (*see* AR 117-20 (November 2001 evaluation finding plaintiff disabled for a maximum of six

11    months) and AR 129-32 (May 2002 evaluation finding same)), that her disability began as of

12    September 15, 2001, not the date of Dr. Morris's first evaluation, and that evidence subsequent

13    to the second evaluation shows her disability continued well after that point (*see* AR 150-53 (Dr.

14    John Horton's July 2002 evaluation), AR 230-320 (2002-2003 Compass Health records), and AR

15    335-52 (Dr. Hammer's February 2005 evaluation)).  Second, plaintiff rejects the Commissioner's

16    reliance on the regulation governing a claimant's failure to follow prescribed treatment given that

17    the ALJ did not address or follow the specific requirements of that regulation.  *See* 20 C.F.R. §

18    404.1530 ("In order to get benefits, you must follow treatment prescribed by your physician if this

19    treatment can restore your ability to work."; giving examples of acceptable reasons for failure to

20    follow prescribed treatment) and SSR 82-59 (explaining various requirements of rule regarding

21    failure to follow prescribed treatment).

22          In reviewing the medical evidence, the ALJ described the reports from Dr. Morris as

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01  follows:

02  > Dr. Morris completed a psychological evaluation for the Department of Social and
Health Services (DSHS) on May 17, 2002.  He said that the claimant had marked

03  > depression, generalized anxiety disorder, and a panic disorder without agoraphobia.
He opined that the claimant would be limited for three to six months.  Dr. Morris had

04  > previously evaluated the claimant on November 13, 2001, when he noted that the
claimant was not taking any psychotropic medication because the claimant could not

05  > afford them.

06  (AR 20) (internal citations to record omitted).  The ALJ subsequently concluded that plaintiff had

07  mild to moderate limitations in her activities of daily living, and rendered the following RFC

08  assessment:

09  > I agree with the findings of the State Agency, that, while the claimant has severe
mental impairments, she is able to function with the public, coworkers, and

10  > supervisors.  Her problems in the area of concentration, persistence, or pace would
limit her to simple and repetitive tasks as she has some difficulty sustaining

11  > concentration over long periods.  Accordingly, I find the claimant retains the
following [RFC]: the claimant could only perform simple, repetitive tasks.  This is a

12  > generous finding given the evidence suggests that she is much more capable than this.

13  (AR 23-24.)  She does not specifically mention Dr. Morris or address the weight afforded his

14  opinions.  However, immediately preceding the RFC assessment, the ALJ analyzes the medical

15  evidence in some detail:

16  > While clearly the claimant has experienced ongoing problems with depression, the
evidence does not support a finding that she is totally disabled and unable to work as

17  > a result of these problems.  Much of the claimant's depression is situational and
related to her finances.  The newer records refer to steady improvement and that she

18  > has been looking for work, considering work, and considering school.  There is also
evidence, that in spite of evidence that suggests she does not take care of her own

19  > home, she has actually been working doing some housecleaning.  The evidence shows
that the claimant was not in any treatment and not taking any medication at the time

20  > she left work.  She then began treatment and counseling and she experienced
significant improvement.  When undergoing regular treatment, the claimant is much

21  > more stable.  The record shows that she has looked into additional schooling and she
has looked for work, but she has been concerned about working because she might

22  > lose her health benefits.  No one has opined that the claimant is incapable of work.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01     Her treatment records show that her depression tends to fluctuate and that her depression worsens when she faces financial pressures. Even during these times,

02 however, she is able to visit with friends and take care of herself. The record shows that the claimant was willing to seek college training to be a dental assistant a choice

03 for future work that suggests that she felt that she could function when dealing with the general public as clearly this line of work would require ongoing contact with

04 numerous customers. Her counselor felt that she was quite talented in finding work and repeatedly reports that medications are working. Additionally, the evidence

05 shows that the claimant has reported that her depressive symptoms have been present for many years, and her postraumatic stress disorder and bulimia were previously

06 successfully treated so that the claimant was able to work. There is nothing to suggest significant worsening except in so far as it relates to her financial status. I

07 have considered the testimony of Ms. Robinett. I have no reason not to find her credible, but I specifically note that Ms. Robinett did not describe the claimant has

08 [stet] having any particular problems getting along with others.

09 (AR 24.)

10     The Commissioner correctly notes that the ALJ need not spell out the precise weight

11 afforded each physician's opinions and that the Court may appropriately draw inferences from the

12 ALJ's decision. However, in this case, it is not possible to draw inferences from the ALJ's

13 decision as related specifically to the opinions of Dr. Morris. In other words, although pointing

14 in many directions, there is nothing in the ALJ's analysis of the medical evidence directly

15 addressing the reports from Dr. Morris.

16     As noted by plaintiff, the Commissioner relies on post hoc rationalizations, rather than the

17 ALJ's decision. For example, the ALJ's reference to plaintiff not taking medications refers to the

18 time she left work, not to the time of Dr. Morris's first report. Additionally, as noted by plaintiff,

19 the ALJ does not even attempt to address the requirements of 20 C.F.R. § 404.1530 as it relates

20 to failure to medicate. The ALJ also does not address the short durational time periods found on

21 Dr. Morris's reports or whether his two reports taken in conjunction with one another would

22 support a sufficient period of disabling impairment.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01        The ALJ's failure to specifically address the reports from Dr. Morris is particularly

02 troubling given that he at both times found her markedly impaired, with numerous moderate and

03 marked limitations, including the ability to understand, remember, and follow simple, one-to-two

04 step instructions. (AR 118-19, 130-31.) Moreover, even if Dr. Morris or any other physician had

05 opined that plaintiff was incapable of work, such a determination is reserved to the Commissioner.

06 *See* SSR 96-5p (medical source opinions as to whether someone is "'disabled' or 'unable to work'"

07 cannot be disregarded, but are not "entitled to controlling weight or [to be] given special

08 significance" since those determinations are reserved to the Commissioner).

09        For all of these reasons, the undersigned finds a remand for further proceedings warranted.

10 On remand, the ALJ should reassess and directly address the opinions of Dr. Morris. Additionally,

11 to the extent such assessment impacts the remainder of the five step analysis, the ALJ should

12 reexamine those steps accordingly.

13 2.   <u>Drs. Johnston and Regets</u>:

14        As reflected above, the ALJ agreed with the findings of the non-examining state-agency

15 physicians, Drs. Johnston and Regets "that, while the claimant has severe mental impairments, she

16 is able to function with the public, coworkers, and supervisors[,]" and found that "[h]er problems

17 in the area of concentration, persistence, or pace would limit her to simple and repetitive tasks as

18 she has some difficulty sustaining concentration over long periods." (AR 24.) However, plaintiff

19 argues that the ALJ failed to account for the totality of the opinions of these physicians in

20 concluding that she could perform unskilled, simple, repetitive tasks. *See Andrews v. Shalala*, 53

21 F.3d 1035, 1043-44 (9th Cir. 1995). In support, she points to several moderate limitations

22 identified on a Mental Residual Functional Capacity (MRFC) form completed by Drs. Johnston

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01 and Regets, the narrative portion of that form in which they found plaintiff could carry out one-

02 and two-step instruction tasks and noted some difficulties in adapting to changes in a competitive

03 work environment, and the finding on a Psychiatric Review Technique Form (PRTF) that she had

04 moderate difficulties in maintaining concentration, persistence, or pace.  (*See* AR 177, 181-83.)

05      The Commissioner argues that, contrary to plaintiff's contention, the ALJ specifically

06 accounted for the findings of these physicians in assessing her RFC.  She asserts that the ALJ need

07 not recite every limitation as found by these physicians and reiterates that the Court can draw

08 inferences from the ALJ's decision.  *See Magallanes*, 881 F.3d at 755.

09      The *Andrews* decision, pointed to by plaintiff in support of her argument, is inapposite.

10 In that case, the Court found that the ALJ failed to include all of the limitations found by a

11 physician and adopted by the ALJ in a hypothetical to a vocational expert.  53 F.3d at 1043-44.

12 In this case, the ALJ did not expressly adopt the opinions of Drs. Johnston and Regets wholesale

13 and was under no obligation to do so.  Instead, the ALJ adopted the conclusion of these physicians

14 as to plaintiff's ability to interact with the public, supervisors, and coworkers, and acknowledged

15 their finding that she would be able to carry out one- and two-step instructions and maintain

16 concentration for up to two hours at a time by limiting her to simple and repetitive tasks.  (*See* AR

17 24 and 183.)  Accordingly, plaintiff fails to demonstrate error in the ALJ's consideration of the

18 opinions of Drs. Johnston and Regets.

19                                    Step Five

20      An ALJ may rely on the Medical Vocational Guidelines ("guidelines" or "grids") to meet

21 her burden at step five.  *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).  "They may be

22 used, however, 'only when the grids accurately and completely describe the claimant's abilities and

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01  limitations.'" *Id.* (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)). "When a

02  claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range

03  of work permitted by the claimant's exertional limitations, the grids are inapplicable[]" and the

04  testimony of a vocational expert is required. *Id.* (quoting *Desrosiers v. Secretary of Health &*

05  *Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988)). *Accord Tackett v. Apfel*, 180 F.3d 1094,

06  1103-04 (9th Cir. 1999) ("Because Tackett's non-exertional limitations 'significantly limit the

07  range of work' he can perform, mechanical application of the grids was inappropriate.")

08       Here, the ALJ rendered the following assessment at step five:

09       The Medical Vocational Rules do not direct conclusions of disabled or not disabled
         if the claimant's [RFC] consists only of non-exertional limitations based upon the
10       guidelines set forth in Social Security Ruling [(SSR)] 85-15. If the claimant's
         nonexertional limitations do not significantly compromise the ability to perform work
11       at all exertional levels, section 204.00, Appendix 2, Subpart P, Regulations No. 4
         indicates that a finding of not disabled would be appropriate. If the claimant's
12       capacity to work at all levels were significantly compromised, the remaining work that
         she would functionally be capable of performing would be considered in combination
13       with the claimant's age, education, and work experience to determine whether a work
         adjustment could be made.

14
         The work contemplated under grid rule 204.00 is unskilled. The work under this grid
15       rule has no physical limitations, but is unskilled in nature. As the claimant is limited
         to unskilled work, the full range of work contemplated under the grid rule is available
16       for the claimant.

17       I conclude that the claimant's ability to perform work at all exertional levels is not
         significantly compromised by her non-exertional limitations and using section 204.00
18       of the [guidelines] as a framework for decision-making, the claimant is not disabled.
         In addition, I find that there are a significant number of jobs in the national economy
19       that the claimant can perform given her age, education, past relevant work experience,
         and [RFC].

20

21  (AR 25.)

22       Plaintiff raises several arguments to support her contention that the ALJ erred in failing to

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01 obtain vocational expert testimony at step five.  It should be noted that, although the undersigned

02 concludes below that each of these arguments lack merit, the ALJ's step five decision could be

03 implicated by the reassessment of the opinions of Dr. Morris.

04 1.      Limitation to Repetitive Work:

05 As noted above, the ALJ found plaintiff capable of performing simple, repetitive tasks.

06 (AR 24.)  Plaintiff argues that the "repetitive" restriction goes above and beyond a limitation to

07 unskilled work and, therefore, requires vocational-expert testimony at step five.  *See* 20 C.F.R.

08 § 404.1568(a) (2002) ("Unskilled work is work which needs little or no judgment to do simple

09 duties that can be learned on the job in a short period of time.")  She points to *Allen v. Barnhart*,

10 417 F.3d 396, 401-07 (3d Cir. 2005), as supporting this argument.

11 In *Allen*, addressing the ALJ's reliance on SSR 85-15 in considering an individual with

12 nonexertional limitations at step five, the Third Circuit concluded:

13     [I]f the Secretary wishes to rely on an SSR as a replacement for a vocational expert,
    it must be crystal-clear that the SSR is probative as to the way in which the

14     nonexertional limitations impact the ability to work, and thus, the occupational base.
    Here, notwithstanding the fact that stress was alluded to by one of the doctors, and

15     that stress is singled out as an individualized factor in the SSR relied upon, the ALJ
    fails to discuss this and, as a result, his determination that Allen has the ability to

16     perform simple tasks prevalent in the national economy is not supported by substantial
    evidence.

17

18 417 F.3d at 407.  However, while the plaintiff in *Allen* was similarly limited to simple, repetitive

19 work, the court's decision did not focus on, or even specifically address, the "repetitive" limitation

20 in remanding the case.  Instead, the court found itself unable to determine the ALJ's beliefs as to

21 the plaintiff's mental limitations and how they fit into the particular categories in SSR 85-15, and,

22 as reflected in the quotation above, focused on the relevance of limitations other than simple,

01  repetitive work, such as exposure to stress. *Id*. at 405-06.  Accordingly, the undersigned finds that

02  plaintiff fails to establish that the limitation to repetitive work necessitated the testimony of a

03  vocational expert.

04  2.      Severe Mental Impairment:

05          Plaintiff asserts that the ALJ's determination of a severe mental impairment at step two

06  necessitated vocational expert testimony at step five.  She notes that an impairment is considered

07  not severe "if it does not *significantly* limit your physical or mental ability to do basic work

08  activities[,]" 20 C.F.R. § 404.1521(a) (emphasis added), and that "non-exertional limitations

09  '*significantly* limit[ing] the range of work' [a claimant] can perform," renders "mechanical

10  application of the grids . . . inappropriate." *Tackett*, 180 F.3d at 1103-04 (emphasis added).  She

11  cites *Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001), in support of this contention.

12          The Ninth Circuit withdrew the  *Edlund* opinion cited by plaintiff and substituted an

13  unpublished opinion in its place.   *See Edlund v. Massanari*, No. 99-35555, 2001 U.S. App.

14  LEXIS 17960 (9th Cir. Aug. 9, 2001).  Also, although the Ninth Circuit did find that the ALJ in

15  that case "failed to factor [the claimant's] mental impairments into her Step 5 analysis[,]" and

16  noted that the hypothetical proffered to the vocational expert failed to include consideration of

17  such impairments, it did not draw the particular conclusion argued by plaintiff here – that a step

18  two severity finding of a mental impairment necessitates vocational expert testimony. *Id*. at *23-

19  24.

20          As reflected above, Ninth Circuit law deems the grids inapplicable in instances where "non-

21  exertional limitations are 'sufficiently severe' so as to significantly limit the range of work

22  permitted by the claimant's exertional limitations[.]"   *Burkhart*, 856 F.3d at 1340  (quoting

01  *Desrosiers*, 846 F.2d at 577).  *Accord Tackett*, 180 F.3d at 1103-04.  In this case, the ALJ

02  concluded that plaintiff's nonexertional limitations did not significantly limit the range of work she

03  could perform.  Although the step two severity finding looks to "significant" limitations, plaintiff

04  fails to establish that this language mandates vocational expert testimony at step five. Plaintiff did

05  not cite, and the undersigned did not find, any Ninth Circuit case law directly on point supporting

06  this argument.[2]  Additionally, as noted by the Commissioner, SSR 85-15, the ruling relied on by

07  the ALJ in this case, does appear to contemplate application of the grids to a claimant found to

08  have a severe mental impairment, but limited to unskilled work.  *See also Ortiz v. Secretary of*

09  *Health & Human Servs.*  , 890 F.2d 520, 526 (1st Cir. 1989) ("[S]o long as a nonexertional

10  impairment is justifiably found to be substantially consistent with the performance of the full range

11  of unskilled work, the Grid retains its relevance and the need for vocational testimony is

12  obviated.") Therefore, the undersigned finds that plaintiff fails to establish that the existence of her

13  severe mental impairment at step two necessitated the testimony of a vocational expert at step five.

14  3.    <u>Moderate Concentration Deficit</u>:

15        Plaintiff argues that the moderate concentration deficit acknowledged by the ALJ also

16  required vocational expert testimony at step five.  However, none of the "instructive" cases cited

17  by plaintiff support such a proposition.  (*See* Dkt. 15 at 14-15.)  Moreover, in this case, the ALJ

18  specifically accounted for this limitation in restricting plaintiff to simple and repetitive tasks.  (AR

19  _____

20        [2] Decisions from other circuits do provide support for the argument proffered here by
     plaintiff.  *See*, *e.g.*, *Wheeler v. Sullivan*, 888 F.2d 1233,1238 (8th Cir. 1989) ("Since Wheeler

21  suffers from a severe mental impairment, the Secretary must use vocational expert testimony or
     other similar evidence in order to meet his burden of showing the existence of jobs in the national
     economy that the claimant is capable of performing.")  *But see*, *e.g.*, *Ortiz v. Secretary of Health*

22  *& Human Servs.*, 890 F.2d 520, 526-28 (1st Cir. 1989) (cited above).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01 | 24 ("Her problems in the area of concentration, persistence, or pace would limit her to simple and

02 | repetitive tasks as she has some difficulty sustaining concentration over long periods.")

03 | Accordingly, plaintiff fails to demonstrate error at step five with respect to the concentration

04 | deficit acknowledged by the ALJ.[3]

05 | <u>Appeals Council Evidence</u>

06 | Plaintiff submitted to the Appeals Council a February 25, 2005 report – dated some three

07 | months after the ALJ's November 20, 2004 decision – from examining psychologist Dr. Hammer.

08 | Dr. Hammer found plaintiff significantly impaired, markedly limited with respect to her functional

09 | limitations, and satisfying the requirements of several Listed mental impairments.  (*See* AR 335-

10 | 53.)  As noted above, the Appeals Council deemed this report "about a later time" and, therefore,

11 | not affecting the ALJ's decision as to whether plaintiff was disabled beginning on or before

12 | November 20, 2004.  (AR 7.)

13 | Plaintiff argues that Dr. Hammer's February 2005 report justifies a remand for further

14 | administrative proceedings under "sentence four" of 42 U.S.C. § 405(g):  "The court shall have

15 | power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

16 | or reversing the decision of the Commissioner of Social Security, with or without remanding the

17 | cause for a rehearing."  She points to Ninth Circuit case law supporting the proper consideration

18 | of additional materials submitted to the Appeals Council where the Appeals Council addressed

19 | those materials in the context of denying a request for review.  *See Harman v. Apfel*, 211 F.3d

20 |

21 |      [3] Plaintiff also posits that the opinions of Drs. Johnston and Regets, and the ALJ's

22 | understatement of her limitations, necessitated the testimony of a vocational expert at step five. However, neither of these bare assertions demonstrate error.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01   1172, 1180-81 (9th Cir. 2000); *Ramirez v. Shalala*, 8 F.3d 1449 (9th Cir. 1993).[4]

02   In response, the Commissioner argues that Dr. Hammer's report should only be reviewed

03   to determine whether a remand is necessary to allow the ALJ to further consider this new

04   evidence, and that the Court should remand only if there is a reasonable possibility that the new

05   evidence would change the outcome of the ALJ's determination.  In support, she cites case law

06   applying the "sentence six" standard for remand under 42 U.S.C. § 405(g): "The court . . . may

07   at any time order additional evidence to be taken before the Commissioner . . . , but only upon a

08   showing that there is new evidence which is material and that there is good cause for the failure

09   to incorporate such evidence into the record in a prior proceeding[.]" *See*, *e.g.*, *Matthews v. Apfel*,

10   239 F.3d 589, 594 (3d Cir. 2001).  She concludes that, in this case, the new evidence would not

11   have changed the outcome, given that Dr. Hammer examined plaintiff some three months after the

12   ALJ's decision and did not relate his findings back to the relevant time period.  (*See* AR 337.) The

13   Commissioner states that, normally, the Appeals Council will consider new and material evidence

14   only where it relates to the period on or before the date of the ALJ's decision.  *See Bates v.*

15   *Sullivan*, 894 F.2d 1059, 1064 (9th Cir. 1990).

16   As noted by plaintiff, this dispute presents a recurring issue between the parties as to how

17   the Court should deal with evidence submitted to the Appeals Council.  However, the law appears

18   to well support plaintiff's position.  *See Harman*, 211 F.3d at 1180-81; *Ramirez*, 8 F.3d at 1451-

19   52.  *Cf. Mayes v. Massanari*, 276 F.3d 453, 461 & n.3 (9th Cir. 2001) (stating that the court

20

21   _____

22   [4] Plaintiff also cites an unpublished opinion from this Court.  *See Anderson v. Barnhart*, No. C02-2174L, Slip. Op. at 2 (W.D. Wash. Nov. 21, 2003) (evidence presented to the Appeals Council should be evaluated pursuant to sentence four of 42 U.S.C. § 405(g)).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01     "need not decide" whether good cause is required for consideration of Appeals Council evidence).[5]

02          In any event, the undersigned does not find Dr. Hammer's report to support a sentence

03     four remand in this case.  As noted by the Commissioner, Dr. Hammer did not expressly relate his

04     findings back to the relevant time period.  (AR 335-37.)  Instead, he assessed a "current" GAF of

05     45, found the prognosis for improvement to be poor "at this time," and concluded she would not

06     be able to adapt to a regular work schedule "at this time."  (AR 337.)  ( *Accord* AR 338-39.)

07     These facts support the Appeals Council's conclusion that Dr. Hammer's report related to a later

08     time period.  *See*, *e.g.*, *Bates*, 894 F.2d at 1064 (upholding Appeals Council's decision to deny

09     request for review based on the fact that a medical report issued after the ALJ's decision was

10     determined to be "not relevant to the period in question[,]" and not consistent with the medical

11     evidence).   However, because the undersigned finds remand appropriate to allow further

12     consideration of the reports of Dr. Morris, the ALJ should take this opportunity to also specifically

13     address Dr. Hammer's report.

14                               **CONCLUSION**

15          For the reasons described above, this matter should be REMANDED for further

16     administrative proceedings.  A proposed order accompanies this Report and Recommendation.

17          DATED this  2nd  day of  February , 2006.

18

19                               Mary Alice Theiler
                              United States Magistrate Judge

20

21          [5] The undersigned found the Commissioner's position on this issue, both here and in other
cases, difficult to comprehend.  In encountering cases involving evidence submitted to the Appeals
Council in the future, the Commissioner should more directly explain her position and address the

22     cases relied on by plaintiff.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17